UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Kristen Lee McKinley,
     Claimant

     v.                                    Case No. 13-cv-47-SM
                                               Opinion No. 2014 DNH 036
Carolyn W. Colvin, Acting Commissioner,
Social Security Administration,
     Defendant

**O R D E R**

Pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), Claimant, Kristen McKinley, moves to reverse the Commissioner's decision denying her application for Social Security Disability Insurance Benefits under Title II of the Social Security Act (the "Act") and Supplemental Security Income Benefits under Title XVI of the Act, 42 U.S.C. §§ 423, 1381, et seq. See document no. 8.  The Commissioner objects and moves for an order affirming his decision, document no. 11.

**Factual Background**

I.  Procedural History

On August 26, 2010, claimant filed an application for Social Security Disability Insurance Benefits ("DIB benefits"), and Supplemental Security Income ("SSI"), alleging disability beginning August 17, 2010.  She asserts eligibility for benefits based on disabilities due to severe back, neck, arm, shoulder,

leg, and hip pain; pain, numbness, and tingling in her lower and upper extremities; severe headaches and episodes of dizziness and light headedness; weakness; and anxiety, PTSD, ADHD, bipolar disorder, and major depression.  Her application for benefits was denied and she requested an administrative hearing before an Administrative Law Judge ("ALJ").

On February 8, 2012, claimant (who was then 38 years old), her attorney, and an impartial vocational expert appeared before an ALJ.  On March 19, 2012, the ALJ issued his written decision, concluding that claimant was not disabled.  The Appeals Council denied claimant's request for review of the ALJ's decision on December 3, 2012.  Accordingly, the ALJ's decision became the final decision of the Commissioner, subject to judicial review.

Claimant then filed a timely action in this court, appealing the denial of DIB and SSI benefits.  Now pending are claimant's "Motion for Order Reversing Decision of the Commissioner" (document no. 8) and the Commissioner's "Motion for Order Affirming the Decision of the Commissioner" (document no. 11).

II.  <u>Stipulated Facts</u>

Pursuant to Local Rule 9.1(d), the parties submitted a Joint Statement of Material Facts, which is part of the court record

(document no. 12), and need not be recounted in detail in this opinion.

## Standard of Review

I.    Properly Supported Findings by the ALJ are
      Entitled to Deference.

Pursuant to 42 U.S.C. § 405(g), the court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  Factual findings of the Commissioner are conclusive if supported by substantial evidence.[1]  See 42 U.S.C. § 405(g); Irlanda Ortiz v. Secretary of Health & Human Services, 955 F.2d 765, 769 (1st Cir. 1991).  Moreover, provided the ALJ's findings are supported by substantial evidence, the court must sustain those findings even when there may also be substantial evidence supporting the contrary position.  See Tsarelka v. Secretary of Health & Human Services, 842 F.2d 529, 535 (1st Cir. 1988) ("[W]e must uphold the [Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long

---

[1]  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938).  It is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.  Consolo v. Federal Maritime Comm'n., 383 U.S. 607, 620 (1966).

as it is supported by substantial evidence."). See also
Rodriguez v. Secretary of Health & Human Services, 647 F.2d 218,
222 (1st Cir. 1981) ("We must uphold the [Commissioner's]
findings in this case if a reasonable mind, reviewing the
evidence in the record as a whole, could accept it as adequate to
support his conclusion.").

In making factual findings, the Commissioner must weigh and
resolve conflicts in the evidence. See Burgos Lopez v. Secretary
of Health & Human Services, 747 F.2d 37, 40 (1st Cir. 1984)
(citing Sitar v. Schweiker, 671 F.2d 19, 22 (1st Cir. 1982)). It
is "the responsibility of the [Commissioner] to determine issues
of credibility and to draw inferences from the record evidence.
Indeed, the resolution of conflicts in the evidence is for the
[Commissioner], not the courts." Irlanda Ortiz, 955 F.2d at 769
(citation omitted). Accordingly, the court will give deference
to the ALJ's credibility determinations, particularly when those
determinations are supported by specific findings. See
Frustaglia v. Secretary of Health & Human Services, 829 F.2d 192,
195 (1st Cir. 1987) (citing Da Rosa v. Secretary of Health &
Human Services, 803 F.2d 24, 26 (1st Cir. 1986)).

II.  <u>The Parties' Respective Burdens</u>

An individual seeking Social Security disability benefits is disabled under the Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Act places a heavy initial burden on claimant to establish the existence of a disabling impairment. See <u>Bowen v. Yuckert</u>, 482 U.S. 137, 146-47 (1987); <u>Santiago v. Secretary of Health & Human Services</u>, 944 F.2d 1, 5 (1st Cir. 1991).  To satisfy that burden, claimant must prove that her impairment prevents her from performing her former type of work. See <u>Gray v. Heckler</u>, 760 F.2d 369, 371 (1st Cir. 1985) (citing <u>Goodermote v. Secretary of Health & Human Services</u>, 690 F.2d 5, 7 (1st Cir. 1982)).  Nevertheless, claimant is not required to establish a doubt-free claim.  The initial burden is satisfied by the usual civil standard: a "preponderance of the evidence."  See <u>Paone v. Schweiker</u>, 530 F. Supp. 808, 810-11 (D. Mass. 1982).

If claimant demonstrates an inability to perform her previous work, the burden shifts to the Commissioner to show that there are other jobs in the national economy that she can perform.  See <u>Vazquez v. Secretary of Health & Human Services</u>,

683 F.2d 1, 2 (1st Cir. 1982).  See also 20 C.F.R. §§ 404.1512(g).  If the Commissioner shows the existence of other jobs that claimant can perform, then the overall burden to demonstrate disability remains with claimant.  See Hernandez v. Weinberger, 493 F.2d 1120, 1123 (1st Cir. 1974); Benko v. Schweiker, 551 F. Supp. 698, 701 (D.N.H. 1982).

In assessing a disability claim, the Commissioner considers both objective and subjective factors, including: (1) objective medical facts; (2) claimant's subjective claims of pain and disability, as supported by the testimony of claimant or other witnesses; and (3) claimant's educational background, age, and work experience.  See, e.g., Avery v. Secretary of Health & Human Services, 797 F.2d 19, 23 (1st Cir. 1986); Goodermote, 690 F.2d at 6.  When determining whether a claimant is disabled, the ALJ is also required to make the following five inquiries:

> (1)   whether claimant is engaged in substantial gainful activity;
>
> (2)   whether claimant has a severe impairment;
>
> (3)   whether the impairment meets or equals a listed impairment;
>
> (4)   whether the impairment prevents claimant from performing past relevant work; and
>
> (5)   whether the impairment prevents claimant from doing any other work.

20 C.F.R. § 404.1520.  Ultimately, a claimant is disabled only if his:

> physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [s]he lives, or whether a specific job vacancy exists for [her], or whether [s]he would be hired if [s]he applied for work.

42 U.S.C. § 423(d)(2)(A).

With those principles in mind, the court reviews claimant's motion to reverse and the Commissioner's motion to affirm her decision.

## Discussion

I.  <u>Background – The ALJ's Findings</u>

In concluding that McKinley was not disabled within the meaning of the Act, the ALJ properly employed the mandatory five-step sequential evaluation process described in 20 C.F.R. § 404.1520.  He first determined that McKinley had not been engaged in substantial gainful employment since her alleged onset of disability.  Next, he concluded that she has the severe impairments of adjustment disorder with mixed features of anxiety and depression, lumbar degenerative disc disease, left shoulder tendonitis, bursitis in hips, and obesity.  Administrative Record

("Admin. Rec.") at 17-18.  Nevertheless, the ALJ determined that
those impairments, regardless of whether they were considered
alone or in combination, did not meet or equal one of the
impairments listed in Part 404, Subpart P, Appendix 1.  Id. at
19.

     Next, the ALJ concluded that McKinley retained the residual
functional capacity to perform light work, "except [that] she is
limited to occasional balancing, stooping, kneeling and
crawling."  Id. at 20.  He also found that she "can occasionally
climb ramps and stairs" and that she is "limited to frequent
pushing, pulling and overhead reaching with the left upper
extremity . . . [and] frequent bilateral foot operation."  The
ALJ found that McKinley "must avoid all unprotected heights and
exposure to hazardous machinery," and that "she is limited to
simple, routine and repetitive tasks and only occasional
interaction with the public and with co-workers because of her
mental impairment."  Id.  The ALJ concluded, therefore, that
McKinley is capable of performing her past relevant work as a
cashier and housekeeper, and also other jobs in the national
economy.  Id. at 26-28.

Consequently, the ALJ concluded that McKinley was not
disabled from August 17, 2010, through the date of his decision.
Id. at 28.


II.  Claimant's Arguments

On appeal, McKinley argues that the ALJ's RFC finding is not
supported by substantial evidence.  Specifically, she says the
ALJ arrived at his RFC finding by (1) improperly evaluating the
opinion evidence; (2) improperly assess[ing] her credibility; (3)
"unfairly constru[ing]" her daily activities; and (4) ignoring
certain provider notes.[2]


A.  Opinion Evidence

McKinley challenges the ALJ's assessment of the opinion
evidence in two respects.  She says that the ALJ improperly
discounted the opinion of her treating therapist, Rachel Wizer, a
licensed clinical social worker, regarding the extent of
functional limitations caused by her mental impairments, and
further, that he impermissibly rejected her treating physician's

---

2  Claimant also argues that the ALJ did not properly rely on the
vocational expert's testimony with respect to the alternative
hypothetical.  Because the court finds that the ALJ properly
rejected the severe limitations contained in the hypothetical,
the ALJ was not required to adopt the VE's testimony in that
regard.

opinion that her physical impairments rendered her unable to "return to work." Admin. Rec. at 25, 206.

With regard to McKinley's mental impairment, the ALJ found that it limited her to work involving "simple, routine, and repetitive tasks and only occasional interaction with the public and with co-workers." Id. at 20. In making that finding, the ALJ gave the "greatest weight" to the opinion of the consultative psychological examiner, Stephanie Griffin, Ph.D. Id. at 26. Dr. Griffin reviewed the available record and opined that McKinley's mental impairments "did not have a significant adverse impact on [her] work related functions." Id. She concluded that McKinley could adhere to a schedule, interact with others, and make decisions, and that "continued psychiatric medication management and counseling would assist [her] in coping with situational stressors." Id.

In further support of his mental RFC finding, the ALJ noted that McKinley generally scored in the normal range on mental status examinations and that, over the years, she "received only minimal health care for her mental impairment." Id. at 24. He discounted the opinion of McKinley's treating therapist, Ms. Wizer, who had concluded that McKinley had severe limitations in key work-related functions, and "no useful ability" to deal with

10

work stress and even simple instructions.  Admin. Rec. at 25;
1128-31.

McKinley faults the ALJ for giving "little weight" to Ms.
Wizer's opinion.  McKinley's briefing on the point is
undeveloped, and on this ground, alone, her argument should be
rejected.  But even on the merits the argument fails.  See e.g.
O'Neill-Beal v. Colvin, 2013 WL 5941070, at *5 (D. Me. Nov. 5,
2013) (claimant's "latter argument is undeveloped and thus
waived, but neither argument could prevail in any event.").  The
ALJ stated that he put little value on Ms. Wizer's opinion
because it was based on a "brief treatment history" of three
months.  Admin. Rec. at 26.  He also determined that Ms. Wizer's
opinion was inconsistent with the "substantial clinical or
diagnostic findings" in the record, with "the testimony presented
at the hearing," and "with the record as a whole."  The ALJ
"note[d] that Ms. Wizer is not an acceptable medical source"
under the regulations.  Id.

The regulations "do[] not expressly require that
administrative law judges provide 'good reasons' for discounting
the opinion of a source who is not an 'acceptable medical
source.'"  King v. Astrue, 2010 WL 4457447, at *4 (D. Me. Oct.
31, 2010) (Rich, M.J.) (quoting and citing SSR 06-03p, 2006 WL

11

2329939, at *2 (2006)), <u>aff'd</u> 2010 WL 4823921, at *1 (D. Me. Nov. 22, 2010).  Nevertheless, the ALJ, here, did provide good reasons for assessing "little weight" to Ms. Wizer's opinion, and his assessment is supported by substantial evidence.

With regard to McKinley's physical impairments, the ALJ found that they limited her to light work with some additional limitations.  Admin. Rec. at 20.  In making that finding, the ALJ gave "great weight" to the opinion of McKinley's treating physician, Dr. Minh Tran.  <u>Id</u>. at 25.  Dr. Tran, a physical medicine and rehabilitation specialist, opined that "claimant was at only 15% whole person impairment," <u>id</u>., and he agreed with a functional capacity evaluation that indicated McKinley was able to work an eight-hour day.  <u>Id</u>. at 324.  The ALJ acknowledged that the opinion predated claimant's alleged date of disability, but also noted that the record documented improvement, not deterioration, in her condition since that time.  <u>Id</u>. at 21-22.

The ALJ also assigned varying weight to the opinions of Dr. S. J. Holman.  <u>Id</u>. at 25.  Dr. Holman, a pain specialist, "completed a Worker's Compensation evaluation and assessed that the claimant could occasionally bend, kneel, squat, climb, stand, walk, sit, and reach," and that claimant "had no restrictions in her ability to drive."  <u>Id</u>.  Dr. Holman also checked "no" to the

12

question of whether McKinley can "return to work," but opined

that she had not reached maximum medical improvement.  Id. at

206.

The ALJ accepted Dr. Holman's opinion that McKinley could

occasionally bend, kneel, etc., and found the opinion to be

consistent with his RFC finding that McKinley could do light work

with some restrictions.  He rejected Dr. Holman's opinion,

however, that claimant could not return to work.  Noting that it

was "not clear that the doctor was familiar with the definition

of 'disability' contained in the Social Security Act and

regulations," the ALJ reasoned that "it is possible that Dr.

Holman was referring solely to claimant's inability to perform

her past relevant work as a convenience store manager, which is

consistent with the conclusions reached in this decision."  Id.

at 25.

McKinley argues that the ALJ improperly rejected Dr.

Holman's opinion that she could not "return to work."  The

argument is without merit.  For one thing, the opinion does not

constitute a "medical opinion" under the Commissioner's

regulations, but rather, is an opinion on an issue reserved to

the Commissioner.  See SSR 96-5p, 1996 WL 374183, at *3.  In

addition, the ALJ reasonably inferred, as he was entitled to do,

that Dr. Holman believed he was answering the question whether McKinley could return to her work as a convenience store manager. See Irlanda Ortiz, 955 F.2d at 769 (the ALJ is entitled to draw reasonable "inferences from the record evidence").[3]

For all of these reasons, the court finds that the ALJ properly assessed the opinion evidence.

B.  Claimant's Credibility

When a claimant demonstrates that her impairment could reasonably be expected to produce the symptoms she alleges, the ALJ is required to determine the intensity, persistence, and limiting effects of those symptoms.  20 C.F.R. § 404.1529(c).  In making that determination, the ALJ must evaluate the claimant's "statements about the effects of her symptoms ... in light of the medical evidence and other evidence such as precipitating and aggravating factors, medications and treatment, and how the symptoms affect the applicant's daily living."  Syms v. Astrue, 2011 WL 2972122, at *4 (D.N.H. July 21, 2011) (DiClerico, J.) (citing 20 C.F.R. § 404.1529(c)(3)).

---

[3]  McKinley's identical argument regarding Dr. Ollar's notation is, likewise, rejected.

McKinley alleges that the intensity, persistence, and
limiting effects of her impairments are so severe as to render
her unable to work.  In a September 21, 2010, function report,
she stated that she has to "sit down to get dressed; has
difficulty standing in the shower; experiences pain in her left,
dominant hand while brushing her long hair; and has pain while
bending to shave her legs and when standing for too long to
cook."  Jt. Stmt., doc. no. 12 at 15.  She reported that she must
sit frequently while cooking and that she requires help to lift
laundry in and out of her car.  Id.  McKinley also indicated that
she needs to stop and rest after walking for ten minutes; that
she is "able to pay attention for about 15 minutes"; and that she
"gets overwhelmed very easily . . . and . . . [does] not handle
changes in routine well."  Id. at 15-16.

At the administrative hearing, McKinley testified,
consistent with her function report, that she is physically
limited in her daily activities.  She reported that she is
"unable to work because she cannot stand for long periods of time
or deal with large groups of people"; "cannot stand for more than
a half hour before needing to sit"; and "frequently has to change
positions while sitting because of low back pain."  Id. at 17.
She added that she has "tendinitis in her left rotator cuff";
"bursitis in her hips, which radiates down her legs and prevents

15

her from standing for long periods of time"; and "problems with both knees."  Id. at 17-18.

McKinley also testified as to the effects of her mental impairments.  Although she described her psychiatric medication as helpful, she also "report[ed] significant mental health symptoms including racing thoughts, impaired sleep, decreased concentration, irritability, mood swings, depression, and anxiety."  Admin. Rec. at 21.

The ALJ found that McKinley's statements "concerning the intensity, persistence and limiting effects of [her] symptoms" were not entirely credible.  Id.  The ALJ reached that conclusion in light of clinical signs and medical opinion evidence; McKinley's course of treatment; her "history of non-compliance with rehabilitative therapy"; and her "high level of activities of daily living."  Id. at 21-23.  He also found McKinley not entirely credible because she had "stopped working in February 2009 due to a business-related layoff" and amended her disability onset date "to August 17, 2010, which is the date that the claimant's unemployment benefits ceased."  Id. at 23.

In addition to those reasons, the ALJ cited as "[a]nother factor influencing" his credibility assessment claimant's

16

"appearance and demeanor while testifying at the hearing." Id. at 23.  He explained:

> [T]he claimant shifted in her seat numerous times and explained that she did so in order to alleviate her pain at the start of the hearing.  However, the undersigned observed that the claimant stopped alternating positions and shifting mid-way through the hour and twenty minute hearing.  Furthermore, the undersigned observed that the claimant appeared bored and not in pain throughout the duration of the hearing.

Id.

McKinley argues that the ALJ's credibility determination is flawed because the ALJ was not entitled "to assess a Plaintiff's pain based on limited observation and subjective speculation that the Plaintiff appears bored during a hearing."  Pl. Br., doc. no. 8-1, at 12.  The argument is entirely without merit.

"Part of the ALJ's credibility determination necessarily involves an assessment of a claimant's demeanor, appearance, and general 'believability.'"  Guerin v. Astrue, 2011 WL 2531195, at *6 (D.N.H. June 24, 2011).  In sizing up McKinley's demeanor and apparent ability to sit without great pain, the ALJ, therefore, did what he was authorized and expected to do in his role as factfinder.  Moreover, he appropriately assessed that single piece of information within the context of a larger mix of evidence, which itself was more than enough to support his conclusion that McKinley's complaints about the severity,

17

persistence, and limiting effects of her symptoms were not entirely credible.  See Teixeira v. Astrue, 755 F. Supp. 2d 340, 347 (D. Mass. 2010) (ALJ's consideration of claimant's demeanor, as "one factor . . . among several," was "particularly appropriate" where claimant alleged disabling pain).

   C.  Daily Activities

   McKinley argues that the ALJ "unfairly construed [her] daily activities to demonstrate she had residual functional capacity." Pl. Br., doc. no. 8-1, at 10.  In support, she points out that she testified to disabling limitations in carrying out daily tasks, including limitations in lifting, dressing, and bathing her son; washing herself; and doing the dishes and other household chores.  McKinley says that the ALJ glossed over these limitations, "recount[ing] plaintiff's activities of daily living to make it sound as if she had an unqualified ability to walk, cook, take care of her personal hygiene, drive, and attend to her infant son without limitation."  Id.

   McKinley's argument is rejected.  It is true that an ALJ errs when he "misconstrue[s]" the evidence of claimant's activities of daily living, or gives that evidence only "cursory consideration."  Blake v. Apfel, 2000 WL 1466128, at *6, 8 (D.N.H. Jan. 28, 2000) (Barbadoro, J.).  The ALJ, here, made

neither of those mistakes.  Instead, he thoughtfully assessed the probative value of McKinley's testimony about her daily activities and drew supportable conclusions from it.

The ALJ first fully acknowledged that "claimant has described daily activities, which are fairly limited."  Admin. Rec. at 24.  He concluded, however, that McKinley's testimony was of limited probative value, explaining that "two factors weigh against considering these allegations to be strong evidence in favor of finding the claimant disabled."  Id.  First, the alleged limitations in claimant's daily activities "cannot be objectively verified with any reasonable degree of certainty."  Id.  Second, "even if the claimant's daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed in this decision."  Id.

And although he assessed limited probative value to McKinley's testimony about her daily activities, he supportably found that, even as she described them, McKinley's daily activities are "not limited to the extent one would expect, given the complaints of disabling symptoms and limitations."  Id.  He noted, in particular, that McKinley "lives independently";

19

"attend[s] to her personal care needs, drives a car, shop[s] in stores, prepare[s] meals, go[es] out to eat in restaurants, do[es] laundry, wash[es] dishes, care[s] for her nine-month old son, and [has] weekend visits with her 14-year old daughter." Id.  He also noted that she is "able to manage her own finances, maintain friendships, . . . watch movies . . . attend[] religious services on Sundays, and is able to interact with the servicing minister."  Id. at 24-25.

At bottom, the ALJ did not improperly assess or misconstrue McKinley's reports regarding her daily activities.

D.  Undiscussed Notes

An ALJ must consider and weigh all relevant evidence.  See Alcantara v. Astrue, 2007 WL 4328148, at *2 (1st Cir. Dec. 12, 2007) (citing 20 C.F.R. §§ 416.920(a)(3), 416.920(a) & (c)).  To demonstrate that the ALJ impermissibly ignored evidence, a claimant must do more than point to the fact that the ALJ never mentioned the evidence in his written decision.  See Dwyer v. Astrue, 2012 WL 2319097, at *4 (D.N.H. June 19, 2012) (an ALJ is not required to "to discuss 'every piece of evidence in the record'") (quoting Shulkin v. Astrue, 2012 WL 79007, at *8 (D.N.H. Jan. 11, 2012) (Barbadoro, J.)).  She must also show that the evidence is probative of her claim and not cumulative of

evidence the ALJ explicitly addressed.  <u>Shulkin</u>, 2012 WL 79007,
at *8-9.  In other words, claimant must show that the ALJ
essentially "adopted one view of the evidence, 'without
addressing the underlying conflict.'"  <u>Id</u>. at *9.

McKinley says that the ALJ failed to consider comments
included in four treatment provider notes and one educational
intake form.  All of the notations describe what could be
regarded as disabling symptoms.  To that extent, then, they are
probative of McKinley's claim.  But because they all represent
the provider's or educator's recitation of McKinley's subjective
complaints, they are cumulative of evidence the ALJ explicitly
addressed in his written decision.  The ALJ directly and
thoroughly addressed the underlying conflict between claimant's
subject complaints of disabling limitations and the very
substantial body of evidence suggesting that claimant suffers
only limited functional losses.  His failure to discuss those few
cumulative notations does not, therefore, constitute error.

### Conclusion

For the foregoing reasons, claimant's motion to reverse the
decision of the Commissioner (document no. <u>8</u>) is denied.  The
Commissioner's motion to affirm her decision (document no. <u>11</u>) is

granted.  The Clerk of Court shall enter judgment in accordance with this order and close the case.

       **SO ORDERED.**

                                      _____
                                        Steven J. McAuliffe
                                        United States District Judge

February 26, 2014

cc:  Christine W. Casa, Esq.
     Robert J. Rabuck, AUSA